IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| VS. | ) | |
| | ) | Cr. No. 07-100S |
| IDELFONSO BETANCOURT-RODRIGUEZ, | ) | |
| a/k/a Chacho, and | ) | |
| RAFAEL FERNANDEZ-ROQUE, | ) | |
| a/k/a Rafael Hernandez-Roque, and | ) | |
| ADOLFO VERDUGO, and | ) | |
| JUAN MANUEL CASILLAS | ) | |

## GOVERNMENT'S TRIAL MEMORANDUM

### I. The Indictment and Elements

The indictment charges OMAR ALTAMIRANO-NUNEZ, a/k/a Juan Carlos Diaz Delgadillo a/k/a Burras, IDELFONSO BETANCOURT-RODRIGUEZ, a/k/a Chacho, RAFAEL FERNANDEZ-ROQUE, a/k/a Rafael Hernandez-Roque, ADOLFO VERDUGO, and others known and unknown to the grand jury with Conspiracy to Distribute and to Possess with Intent to Distribute Five Kilograms or More of Cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846 (Count One), and OMAR ALTAMIRANO-NUNEZ, a/k/a Juan Carlos Diaz Delgadillo a/k/a Burras and JUAN MANUEL CASILLAS with others known and unknown to the grand jury, with Conspiracy to Commit certain offenses, Knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducted and attempted to conduct such a financial transaction which in fact involved the proceeds of a specified unlawful activity, to wit: the manufacture, importation, sale, and distribution of a controlled substance, with the intent to promote the carrying on of the specified unlawful activity, in violation of 18 U.S.C. §§1956(a)(1)(A)(I) and 2, all in violation of 18 U.S.C. §371 (Count

Three).[1]

The elements of Count One are as follows:

First, that from a time unknown but up to and including May 30, 2007, that the agreement specified in the proposed indictment, existed between at least two people, including the Defendant;

Second, that the agreement was to distribute or possess with intent to distribute cocaine; and,

Third, that the Defendant willfully joined that agreement.

If the jury finds the government proved each of the above elements beyond a reasonable doubt, then the jury must answer the following question:

Did the offense involve 5 kilograms or more of cocaine?

The elements of Count Three are as follows:

First, that from a time unknown but up to and including January 30, 2006, the Defendant knowingly aided and abetted others in the possession of the controlled substance;

Second, that the Defendant knew that the substance was a controlled substance; and,

Third, that the Defendant acted intentionally, that is, it was his conscious object to assist another with the possession of the controlled substance with intent to distribute it.

If the jury finds the government proved each of the above elements beyond a reasonable doubt, then the jury must answer the following question:

Did the offense involve 5 kilograms or more of cocaine?

---

[1] To date, only Defendant OMAR ALTAMIRANO-NUNEZ, a/k/a Juan Carlos Diaz Delgadillo a/k/a Burras, has pled guilty.

II. Factual Summary

The government expects the evidence in this case to show the following:

In November of 2006, the Drug Enforcement Administration (DEA) San Diego Field Division intercepted communications between an individual called Primo, later identified as Alexander Rodriguez Sahagun, and Juan Casillas (Casillas), indicating that Casillas, was to fly to Rhode Island to pick up cash drug proceeds from cocaine distribution for Sahagun and return with the money to California. On November 27, 2006, surveillance observed Casillas purchase a new cellular telephone and program numbers into it, as well as obtain a truck from Co-defendant, Omar Altamirano-Nunez, a/k/a Juan Carlos Diaz Delgadillo a/k/a Burras (Juan Carlos), and a co-conspirator named Victor Bravo-Rodriguez, who has been indicted in the District of Massachusetts on related charges. The Rhode Island State Police later pulled over the truck for a traffic violation. The truck was not registered to Casillas and he did not have a bill of sale. Providence DEA seized $129,200 secreted in a hide inside the truck. Casillas was released by law enforcement but was given a contact number to call regarding the truck. On December 5, 2006, Jhonatan Magdaleno, a co-conspirator currently indicted in the District of Massachusetts on related charges and the owner of the vehicle, contacted that number and attempted to obtain his truck. He was told by the police that $129,200 had been seized from the truck in a hidden compartment. He denied any knowledge of it, claiming that the driver (Casillas) must have put it in there. The Defendants, Juan Carlos and Casillas knew that the drug proceeds were to be transported to California.

Providence DEA obtained Court authorization in the District of Rhode Island to intercept cellular communications of Juan Carlos, and his associates. Based upon information from these

wiretaps, on May 30, 2007, in the early morning hours, 29 kilograms of cocaine were seized on the highway outside Springfield, Massachusetts. Idelfonso Betancourt-Rodrigues, a/k/a Chacho (Betancourt) was arrested along with two other men, Juan Carlos and Rafael Hernandez-Roque (Roque).

Wire intercepts, corroborated by cell site information and surveillance, demonstrated that from May 26, 2007 to May 29, 2007, Juan Carlos engaged in a series of telephone calls, with co-defendants Betancourt, Roque, and Adolfo Verdugo (Verdugo), which took place while Juan Carlos was in Rhode Island. During these telephone calls, Juan Carlos made arrangements to pick up 29 kilograms of cocaine. Co-defendants Betancourt and Roque assisted him.

On May 29, 2008, a series of telephone calls took place between Juan Carlos (driving a Honda van) and Betancourt and Roque (who were driving in a Jeep Cherokee). All three men drove from Providence, Rhode Island to a motel in Springfield, Massachusetts, where the three men checked into a room in the early morning hours of May 30, 2007. The intercepts show that after communicating with co-defendant Verdugo, the men left the hotel and went to pick up 29 kilograms of cocaine. Subsequent intercepts indicated that a tractor trailer truck contained the 29 kilograms. During intercepts, Verdugo (using a cell phone that he later admitted was his) directed Juan Carlos to a rest area. Juan Carlos replied that "the guy is with me and has a Cherokee (Jeep)." This was the vehicle driven by co-defendant, Betancourt and in which Roque was the passenger. Juan Carlos then called Betancourt and told him to park between the two trucks in the rest area and shut everything off. The Cherokee then exited into the rest area as the Honda continued past the rest area and took the next exit on the highway, #17. The Cherokee parked between two tractor trailer trucks. The Cherokee was there for approximately one minute.

It then reentered the highway as the Honda made its way back onto the highway from the southbound entrance #17. Roque then called Juan Carlos and told him "I'm ready." Juan Carlos asked "what?" and Roque repeated, "I'm ready." Juan Carlos told Roque that Altamirano was driving very slowly and to pass him. Altamirano then called Betancourt and asked him if he had passed exit 17 yet. Juan Carlos told Betancourt to pass him. Juan Carlos then called Verdugo and asked if everything was okay and Verdugo replied, "It's all done."

The Massachusetts State Police followed the Cherokee and pulled it over. The two men were identified. Neither had a driver's license. The police noted an unzipped, open, black duffel bag in the rear seat with 29 kilograms of cocaine. The police were able to see the wrapped kilograms of cocaine in the bag, and smelled the chemical smell associated with cocaine. The cocaine was sent to the Massachusetts State Police Crime Laboratory where it was tested by a chemist who determined that the substance was cocaine and that the net weight was 29.09 kilograms (roughly 64 pounds).

The police also stopped Juan Carlos in the Honda which was ahead of the Cherokee on the highway. A pat frisk of Juan Carlos revealed the room key from the Springfield motel. Inside the vehicle on the front seat, the two target cellular phones were located. During the inventory search of the Cherokee, a cellular telephone was located which Betancourt admitted belonged to him. The police found a cellular telephone on Roque's person. During processing, both men said that they were unsure of their addresses in Providence but that they both worked for Juan Carlos at a garage.

After the delivery of cocaine the rest area was sealed off so that no vehicles could leave. The tractor trailer that the Cherokee had parked near was approached by the police. Inside the

tractor trailer police identified Verdugo and Arias-Cortez. Both men spoke both Spanish and English. A drug dog was run over the tractor and trailer but did not alert. Four cell phones were taken. DEA Task Force Agent Michael Naylor dialed the cellular telephone that had been in communication with Altamirano on May 30, 2007. The phone was located on the center console of the tractor and that cell phone rang. Verdugo admitted to the police that it was his phone and signed a receipt indicating the same.

## III. Legal Issues

### A. Agent Opinion Evidence

The government will offer the testimony of law enforcement personnel, in particular Task Force Agent (TFA) Michael Naylor, who will testify, based on their extensive experience and training in the field of narcotics trafficking, to the methods and operation unique to narcotics trafficking and to techniques used by law enforcement in a narcotics investigation. Specifically, agents may testify to the price of cocaine; the manner in which cocaine is manufactured, packaged, sold and used; the equipment used in narcotics trafficking; and, the "code", as well as other tactics used by drug dealers, to evade detection by law enforcement. Agents may testify to methods used to launder proceeds from drug trafficking, and what methods were used in this case.

The First Circuit has consistently upheld the introduction of this type of agent testimony. See United States v. Maher, 454 F.3d 13, 23-24 (1st Cir. July 6, 2006) (upholding the admission of agent testimony regarding the meaning of words and numbers used in "Post It" notes seized from the defendant's vehicle, and testimony regarding the typical packaging of narcotics); United States v. Ayala-Pizarro, 407 F.3d 25, 28-29 (1st Cir. 2005) (affirming the district court's decision

to admit agent testimony regarding the packaging of narcotics and how drug points operate); United States v. Reynoso, 336 F.3d 46, 49 (1st Cir. 2003) (opinion that drug quantity was consistent with possession with intent to distribute); United States v. Villarman-Oviedo, 325 F.3d 1, 13 (1st Cir. 2003) (in a narcotics case, agent allowed to testify to meaning of code words); United States v. Rivera-Rosario, 300 F.3d 1, 17 (1st Cir. 2002) (coded drug phrases); United States v. Valle, 72 F.3d 210, 214-15 (1st Cir. 1995).

Experienced investigators may also be "permitted to testify as experts on topics such as the structure of a criminal enterprise, the economics of the drug trade, and the handling of contraband." United States v. Sepulveda, 15 F.3d 1161, 1183-84 (1st Cir. 1993); United States v. Hensel, 699 F.2d 18, 38 (1st Cir.) (general practices of drug smugglers), cert. denied, 461 U.S. 958 (1983).

IV. Requested Voir Dire and Jury Instructions

The government will file its proposed voir dire questions and jury instructions under separate cover.

V. Witness and Evidence List

The government will submit a witness and evidence list under separate cover prior to the commencement of trial.

VI. Estimated Time of Trial

The government estimates that if four Defendants elect to proceed to trial, that it will take five to six days to conduct the trial.

Respectfully submitted,
UNITED STATES OF AMERICA

By its Attorneys,

ROBERT C. CORRENTE
United States Attorney

/s/ MARY E. ROGERS

MARY E. ROGERS
Assistant U.S. Attorney
RI Bar #3107
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email mary.rogers@usdoj.gov

**CERTIFICATE OF SERVICE**

On February 15, 2008, I caused the within "Government's Trial Memorandum" to be filed electronically and is available for viewing and downloading from the ECF system.

Electronic notification:

Frank Flanagan, Esquire
130 Bellevue Avenue
Newport, RI 02840

Joseph J. Voccola, Esquire
454 Broadway
Providence, RI 02909

Andrew Berg, Equire
Sammartino & Berg, LLP
128 Dorrance Street, Suite 400
Providence, RI 02903

Steven DiLibero, Esquire
130 Dorrance Street
Providence, RI 02903

John F. Luis, Esquire
128 Dorrance Street, Suite 400
Providence, RI 02903

/s/ MARY E. ROGERS
MARY E. ROGERS
Assistant U.S. Attorney
RI Bar #3107
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email mary.rogers@usdoj.gov